United States District Court
Southern District of Texas
**ENTERED**
August 01, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Nathan Joel Nichols, Jr., | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action H-18-1565 |
| Lorie Davis, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## Memorandum and Recommendation

Nathan Joel Nichols, Jr. is serving a twenty-year sentence for aggravated assault. Nichols filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Lorie Davis has moved for summary judgment. (D.E. 20.) Nichols has filed a motion for an evidentiary hearing. (D.E. 23.) The court denies Nichols's motion for an evidentiary hearing and recommends that Davis's motion for summary judgment be granted and Nichols's petition be denied with prejudice.

### 1. Factual Background and Procedural Posture

On the night of March 18, 2011, and into the early morning hours of March 19, Nathan Joel Nichols, Jr., Brandon Shawn Williams, and Chavonne Williams were at the El Dorado Night Club in Beaumont, Texas. According to Chavonne Williams, when she tried to leave the night club parking lot, another car blocked her car from exiting. Nichols was sitting in the other car and refused to move. Brandon Williams exited the nightclub to meet Chavonne Williams in the parking lot. He and Nichols exchanged words, and Nichols shot Brandon Williams in the leg, hospitalizing him.

On July 10, 2012, a grand jury in Jefferson County indicted Nichols with aggravated assault, a second-degree felony. (D.E. 21-1 at 4.) The trial was continued nine times between July 11, 2012, and November 4, 2013. The court held a hearing on November 4, 2013, at which the trial court discussed with Nichols certain complaints he had raised about his counsel's representation. (D.E. 21-5 at 29.)

Nichols waived his right to a jury trial on November 9, 2013. (D.E. 21-5 at 27.) He pleaded not guilty. (D.E. 21-7 at 7.) Nichols's bench trial proceeded before the 252nd District Court of Jefferson County, Texas on February 6, 2014. Six witnesses testified for the State: Chavonne Williams, Brandon Williams, and four officers who arrived at the scene or investigated the incident—Officers Daniel McCauley, Jonathan Barryhan, Joshua Jackson, and Shawn Tolley.

Nichols testified in his own defense. (D.E. 21-7 at 3.) Nichols testified that he was at the El Dorado Night Club on the night of March 18, 2011, where he had a confrontation with Brandon Williams and shot in Williams's direction out of fear for his life. (D.E. 21-7 at 126–42.)

The court found Nichols guilty of aggravated assault. The court held a punishment hearing on April 2, 2014, and sentenced Nichols to twenty years in the Texas Department of Criminal Justice. (D.E. 21-8.) Nichols appealed his conviction and sentence. His sentence was reversed and remanded for re-sentencing, and Nichols was again sentenced to twenty years. Nichols filed a state habeas application in October 2017. (D.E. 21-25.) The 252nd District Court of Jefferson County issued written findings of fact and conclusions of law on Nichols's application on January 9, 2018. (D.E. 21-24 at 20.) The Texas Court of Criminal Appeals denied Nichols's habeas application without written order on the findings of the trial court without a hearing on March 14, 2018. (D.E. 21-20.)

2. *Evidentiary Hearing*

Nichols argues that an evidentiary hearing is required because he does not have a copy of the full record of his trial. (D.E. 23 at 1.) He

argues that the State's "factual determination is not fairly supported by the record as a whole" and that "[t]he fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing." (D.E. 23 at 1.)

An evidentiary hearing may be ordered in federal court on habeas review only when the applicant fails to develop the factual record in state court, and

> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*See* 28 U.S.C. § 2254(e)(2). Nichols has not shown that the factual record was not sufficiently developed in state court. He has not presented a claim based on a new and retroactive rule of constitutional law that would impact his claims. He has not presented any fact that could not have been previously discovered. He has not alleged facts that would show that no reasonable factfinder could find him guilty. Nichols is not entitled to an evidentiary hearing.

### 3. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by" the Supreme Court, or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's factual findings are presumed correct, and the applicant bears the burden to overcome that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). "As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018). AEDPA requires the court to defer to the state habeas court's express and implicit findings of fact and conclusions of law. *See Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

### 4. *Analysis*

Nichols claims that

(A) the trial court erred by conducting a bench trial without Nichols's written waiver of a jury trial

(B) the trial court erred by denying his pro se motion to suppress a photographic lineup on which Nichols's in-court identification was based

(C) he was denied a speedy trial

(D) his counsel was ineffective for

1. failing to investigate
2. failing to move to suppress identification
3. failing to call additional witnesses
4. making incorrect and misleading statements
5. failing to object to the state's sentence during punishment on remand

(E) the trial court abused its discretion by denying his motion for new trial based on newly-discovered evidence

(F) he is actually innocent

A. *Exhaustion and procedural default*

Davis argues that some of Nichols's claims are unexhausted or procedurally defaulted. Federal courts may not grant habeas relief to state prisoners unless they have first exhausted all remedies available in state court. 28 U.S.C. § 2254(b)(1)(A). To properly exhaust state remedies, a state prisoner must "fairly present" all his claims to the state court. *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). "[F]or a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions." *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006).

The Texas abuse of the writ doctrine procedurally bars a successive claim by a petitioner that raises grounds that could have been raised in the first petition, unless the petitioner can show cause. *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). The Texas abuse of the writ doctrine is an adequate and independent state procedural bar foreclosing federal habeas review. *Coleman v. Quarterman*, 456 F.3d 537, 542 (5th Cir. 2006).

Nichols has already filed a state habeas petition, which was decided on the merits by the Texas Court of Criminal Appeals. (D.E. 21-20.) Nichols may not return to state court to present any additional claims. *Nobles*, 127 F.3d at 423; *see also* Tex. Code Crim. Proc. Ann. art. 11.07 § 4(a)(1) (West 2018) (barring successive applications). Thus, any claims not raised in Nichols's state habeas petition are procedurally defaulted. *See Coleman*, 456 F.3d at 542.

"Where a defendant has procedurally defaulted a claim . . . the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998). Nichols has cited no cause for his failure to raise certain claims in his initial state habeas petition, nor shown that a fundamental miscarriage of justice will arise. (*See* D.E. 24 (Nichols's response to Davis's motion for summary judgment).) As discussed more fully

below, the court liberally construes Nichols's petition to argue actual innocence, but finds that Nichols has not established actual innocence. *See* Section 4(G), *infra*.

Therefore, as identified more specifically below, certain aspects of some of Nichols's claims are procedurally defaulted from review in this court. *See Coleman*, 501 U.S. at 735 n. 1.

### B.  Lack of a written jury trial waiver

Nichols claims that he did not execute a written waiver of trial by jury as is required by Texas Code of Criminal Procedure article 1.13. The state habeas court found that Nichols executed a written waiver of jury trial prior to commencing the bench trial, which the assistant district attorney, defense counsel, and Nichols all signed. (D.E. 21-24 at 7.) The state habeas court denied this claim because Nichols "fail[ed] to plead sufficient facts which, if proven true, would entitle" him to habeas relief. (D.E. 21-24 at 7–8.) The state court's finding of fact is not unreasonable.

Nichols did execute a written jury waiver. (D.E. 21-5 at 27.) Nichols's lawyer represented to the court at the sentencing phase that "[Nichols] elected voluntarily to go to the Court and not to a jury to hear all the facts and circumstances in order to obtain a fair and impartial trial." (D.E. 21-8 at 5:10–13.)

To the extent that Nichols argues that he did not effectively waive his right to a jury trial because his written waiver lists the cause number as "10-14453" instead of "12-14453," or that the waiver did not conform to the requirements of the Texas Code of Criminal Procedure, Nichols did not raise those arguments before the state habeas court. (D.E. 21-5 at 27.) Nichols has not established cause or prejudice for failing to do so, or actual innocence. These claims are therefore procedurally defaulted from federal review.

### C.  Motion to suppress line-up identification

Nichols claims that the trial court violated his right to due process by denying his motion to suppress. This court will not review

this claim on the merits because review is barred by the "independent and adequate state ground" doctrine. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

Before trial, Brandon Williams identified Nichols as the shooter out of a 'six-pack' line-up of six photographs of six men. (*See* D.E. 21-7 at 61.) Williams also identified Nichols in court. (D.E. 21-7 at 41–42.) Nichols argues that the line-up in which Brandon Williams identified him before trial "was conducted without any safeguards to prevent misidentification." (D.E. 1 at 6.) Nichols filed a pro se motion to suppress the identification on February 21, 2013. (D.E. 21-5 at 23–24.) Nichols's motion argued that a witness was shown photographs of Nichols in a "spread" that "was so impermissibly suggestive as to require the exclusion of any in-court identification." (D.E. 21-5 at 24.)

The state habeas court found that the trial court did not err by ignoring Nichols's motion. (D.E. 21-24 at 8–10.) Under a state law doctrine prohibiting "hybrid representation," the state habeas court found that Nichols's motion was properly denied because Nichols filed it himself, pro se, despite being represented by counsel at the time. (D.E. 21-24 at 8–10); *see also United States v. Whatley*, 245 F.3d 791 at *1 (5th Cir. 2000) ("A defendant who is represented by counsel does not have the right to file *pro se* pleadings.").

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, the "independent and adequate state ground" doctrine bars federal review of the prisoner's claim. *Id.* at 729–30. If a federal court chose "to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.*

The state habeas court denied Nichols's claim for habeas relief based on the hybrid representation rule. The hybrid representation rule is an "independent and adequate state ground" barring federal review of Nichols's claim. *See Fratta v. Davis*, 889 F.3d 225, 228 (5th Cir. 2018). This court has no power to review that state law determination because it is sufficient to support the judgment against Nichols as to that claim. *Coleman*, 501 U.S. at 729.

### D. Speedy trial violation

In his third ground for relief, Nichols alleges that he was denied his constitutional right to a speedy trial. (D.E. 1 at 7.)

Nichols was arrested on October 6, 2011, and indicted on July 10, 2012. Nichols's trial was reset ten times between July 11, 2012, and the date Nichols waived his right to a jury trial—November 9, 2013. Nichols's trial counsel filed a motion for speedy trial on December 6, 2013, asking for trial to be set by April 9, 2014. (D.E. 21-5 at 34.) Nichols's trial date was soon after reset to January 6, 2014. (D.E. 21-5 at 37–38.) Nichols himself filed a motion to dismiss for failure to provide a constitutional speedy trial on December 30, 2013. (D.E. 21-5 at 6–11.) In January the trial was reset twice. The latter reset notice noted that the change was "per Judge Wortham—move up" and set Nichols's bench trial for February 6, 2014, the date on which the trial occurred. (D.E. 21-5 at 42–43.)

Nichols argued to the state habeas court that he was prejudiced by unreasonable pre-trial delay because defense witnesses became unavailable and some witnesses forgot facts that would have benefitted him. (D.E. 21-25 at 17–18.) The state habeas court found that Nichols's allegations of prejudice were conclusory and too speculative to merit relief because he failed to identify any specific witness who became unavailable. (D.E. 21-24 at 10–12.) This court finds that the state habeas court's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. It was also not based

on an unreasonable determination of the facts in light of the evidence presented in the State proceeding. 28 U.S.C. § 2254(d)(1).

The Sixth Amendment guarantees every criminal defendant "the right to a speedy . . . trial." U.S. Const. amend. VI. A four-factor balancing test applies to determine whether a speedy-trial violation has occurred: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

To trigger a speedy-trial analysis under these factors, the accused must allege that the interval between accusation and trial crossed the threshold that separates ordinary delay from presumptively prejudicial delay. *Id.*; *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). A defendant's right to a speedy trial attaches at the time of arrest or indictment, whichever comes first. *Amos v. Thornton*, 646 F.3d 199, 206 (5th Cir. 2011).

The court finds that the four *Barker* factors require denial of Nichols's speedy trial claim.

***Length of delay.*** Nichols was arrested on October 6, 2011, and tried February 6, 2014. This twenty-eight month delay between arrest and trial weighs, at most, slightly in Nichols's favor. *See Amos*, 646 F.3d at 206–07 (reasoning that a delay of less than thirty months precludes the first *Barker* factor from "strongly favor[ing] the accused"). This factor "serves a dual function" as both a substantive *Barker* factor and "a threshold requirement" to considering the remaining factors. *See United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003) (quoted in *Laws v. Stephens*, 536 Fed. App'x 409, 412 (5th Cir. 2013)). While this length of delay is longer than one year and therefore long enough to trigger the full *Barker* analysis, "it is not long enough to weigh heavily in favor of presuming prejudice." *United States v. Frye*, 372 F.3d 729, 737 (5th Cir. 2004) ("Indeed, [our] Court and others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years."). Because

the delay exceeded a year, the court proceeds to the second *Barker* factor.

**Reason for delay.** Delays engineered to "hamper the defense" are "weighted heavily against the government." *Barker*, 407 U.S. at 531. "[U]nexplained or negligent delays" weigh "against the state, but not heavily." *Amos*, 646 F.3d at 207 (citing *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008) (internal quotations omitted)).

Nichols does not explain what caused the delay in his trial. Based on the trial record, the court finds that this factor weighs slightly against him. The trial was reset nine times between July 11, 2012, and November 4, 2013, mostly for unspecified reasons. The court held a hearing on November 4, 2013. (D.E. 21-5 at 29.) An incomplete transcript of the proceeding is all that is filed in the record of this case. That transcript indicates that the trial was delayed because Nichols raised complaints about his lawyer. (D.E. 21-5 at 31–32.)

Although delays early in the case are unexplained and weigh somewhat against the State, Nichols delayed his own trial when he raised complaints about his lawyer. Once Nichols resolved those issues, the trial court set the trial on February 6, 2014, well before the date on which Nichols asserted prejudice would begin to accrue. (D.E. 21-5 at 34 ("Nathan Nichols will be prejudiced should trial not be held on or before April 9, 2014.) This factor weighs against Nichols.

**Defendant's diligent assertion.** This factor weighs heavily against Nichols. Nichols's trial counsel filed a motion for speedy trial on December 6, 2013. (D.E. 21-5 at 34–35.) That motion states that Nichols "will be prejudiced should trial not be held on or before April 9, 2014." (D.E. 21-5 at 34.) Nichols himself then filed a motion to dismiss for failure to provide a constitutional speedy trial on December 30, 2013. (D.E. 21-5 at 6–11.) The court did not rule on either motion, but Nichols was tried less than two months after his

first speedy trial motion, on February 6, 2014—before the date Nichols requested.

A defendant must appropriately assert his speedy-trial right, viewed in "light of [his] other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). "[I]t is possible for a defendant to insufficiently assert his speedy-trial rights despite 'repeatedly mov[ing] for dismissal on speedy trial grounds.'" *Laws*, 536 Fed. App'x at 413 (5th Cir. 2013) (quoting *Loud Hawk*, 474 U.S. at 314).

Nichols asserted that he would be prejudiced if his trial happened after April 9, 2014. He did not assert that any prejudice was then accruing to him as of December. His trial, in fact, began over two months before the date on which delay would allegedly begin to prejudice him. The record reflects that the trial court considered Nichols's motion and responded appropriately by arranging for a prompt trial date.

***Prejudice.*** The court finds that this factor weighs heavily against Nichols. Nichols conceded in his motion for speedy trial in December 2013 that he was not and would not be prejudiced by delay until April 2014. Since Nichols was tried before that date, in February 2014, this factor weighs heavily against Nichols.

Nichols states that he "suffered impairments," causing him "to be placed on medication by [a] psych[iatric] nurse." (D.E. 2 at 11.) Nichols does not substantiate this assertion of mental illness with any evidence and does not explain how it affected the outcome of his trial.

This court concludes that the cumulative weight of the four *Barker* factors is against Nichols. Thus, the state habeas court's adjudication did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the State proceeding. 28 U.S.C. § 2254(d)(1).

Nichols now identifies some specific witnesses who he argues became unavailable or forgot information that would have benefitted

him at trial. He did not identify any specific witnesses in his state habeas proceedings. Nichols has not established cause or prejudice for failing to do so, or actual innocence. To the extent he now raises these specific witnesses as a factual basis for his claim, his claim is procedurally defaulted from federal review. *See Ruiz*, 460 F.3d at 643 (5th Cir. 2006).

### E. *Ineffective assistance of counsel*

#### (1) *Legal standard for § 2254 cases*

To prevail on a claim of constitutionally ineffective assistance of counsel, a petitioner must show (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018). It is "all the more difficult" where a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mejia*, 906 F.3d at 315. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

#### a) *Deficient Performance*

Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, courts must "be highly deferential," eliminate the "distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"Defense counsel's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Mejia*, 906 F.3d at 316 (5th Cir. 2018) (internal citations and quotations omitted). "A court reviewing those

choices is required not simply to give counsel the benefit of the doubt, but to affirmatively entertain the range of possible reasons he may have had for proceeding as he did." *Id.* (internal quotation marks omitted). The Fifth Circuit has "explained that counsel is afforded particular leeway where a potential strategy carries double-edged consequences." *Id.* (internal quotation marks omitted). "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317. "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).

### b) Prejudice

Under *Strickland*, prejudice is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not enough to show that errors had "some conceivable effect" on the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. A court assessing prejudice "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

### (2) Nichols's ineffective assistance of counsel claims

Nichols asserts that his trial counsel rendered ineffective assistance based on several grounds.

### a) Failing to investigate

Nichols argues that his counsel was ineffective because he failed "to investigate the defendant's . . . actual innocence." (D.E. 2 at 12.)

13

He argues that "the record show[s] two different descriptions of the criminal actor." (D.E. 2 at 12.) He argues that his trial counsel failed to investigate certain witnesses in his defense. (D.E. 2 at 17.) He argues that his trial counsel failed to investigate the photographic lineup used to identify him. (D.E. 2 at 13, 15, 17.) And he asserts that his counsel failed to investigate the State's lack of photographic evidence, fingerprints, chemical tests showing that Nichols discharged a firearm, and a cell phone seized at the scene of the shooting. (D.E. 2 at 17.)

In his state habeas application, Nichols did not identify which specific witnesses or evidence his counsel failed to investigate. (D.E. 21-25 at 19–20.) He argued generally that his counsel failed to adequately investigate and prepare for his trial. (D.E. 21-25 at 19–20.)

The state habeas court denied Nichols's claims because Nichols failed to identify specific witnesses or evidence that his counsel should have investigated and what that investigation would have uncovered. (D.E. 21-24 at 13–14 (stating Nichols "fail[ed] to clearly and succinctly identify what pertinent 'fact' or 'evidence' was available for trial counsel to uncover had he conducted a more in-depth investigation").)

As to the deficient performance prong, Nichols's own testimony placed him at the scene of the shooting and identified Nichols as the shooter. Nichols testified that he shot at Williams out of fear for his life. Counsel is not bound to pursue theories of the case that are plainly foreclosed by the defendant's own narrative of events. Thus, Nichols's counsel's decision not to investigate the identity of the shooter did not fall below the *Strickland* standard. *See, e.g., Turk v. White*, 116 F.3d 1264, 1266–67 (9th Cir. 1997) (defense counsel was not ineffective for not pursuing a diminished-capacity defense because it would have conflicted with the primary defense of self-defense).

As to the prejudice prong, a petitioner cannot show prejudice on a claim that his counsel failed to investigate without showing what the investigation would have uncovered and that the outcome would

reasonably likely have been different as a result. *Diaz v. Quarterman*, 239 Fed. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696). Brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence do not suffice. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise an issue in a federal habeas proceeding.").

Thus, the state habeas court did not unreasonably apply *Strickland* in determining that Nichols had failed to establish ineffective assistance of counsel. *See Mejia v. Davis*, 906 F.3d 307, 319 (5th Cir. 2018) ("Under AEDPA . . . the pivotal question is whether the state habeas court unreasonably applied *Strickland* in determining that [counsel] provided effective assistance." (citing *Harrington*, 562 U.S. at 101)).

Nichols now identifies specific witnesses and evidence as the factual basis for his claim. He did not do so in his state habeas proceedings. He has not identified cause or prejudice for his failure to do so, or actual innocence. To the extent Nichols now raises specific witnesses and evidence as factual bases for his failure to investigate claim, the claim was not fairly presented to the state habeas court and is procedurally defaulted. *See Ruiz*, 460 F.3d at 643 (5th Cir. 2006).

### b) *Failing to move to suppress identification*

Nichols argues that his trial counsel should have moved to suppress evidence of a photographic lineup in which Brandon Williams identified Nichols as the shooter, and should have challenged Williams's in-court testimony identifying Nichols. (D.E. 2 at 13, 15, 17.) He asserts that his counsel should have "adopt[ed his] pro se motion" to suppress. (D.E. 2 at 15.) Nichols does not explain why the photographic line-up was impermissible or why the eyewitness identification based on it violated his Constitutional rights.

In his state habeas application, Nichols made a general claim that his counsel was ineffective for failing to file pre-trial motions. (D.E. 21-25 at 19–20.) The state habeas court denied Nichols's claim because he did not indicate what additional pre-trial motions counsel should have presented, which of them had merit, and whether a ruling on any of those motions would have changed the outcome of the case. (D.E. 21-24 at 14.)

To establish deficient performance or prejudice, Nichols needed to state what motions should have been filed or what additional exculpatory information was forfeited as a result of the failure to file the motions. *See, e.g., Martin v. Thaler*, Civ. Action No. 10-050, 2010 WL 2697155, at *4 (N.D. Tex. July 7, 2010). Thus, this court finds that the state habeas court did not unreasonably apply *Strickland* in determining that Nichols's counsel provided effective assistance as to this ground. *See Mejia v. Davis*, 906 F.3d 307, 319 (5th Cir. 2018).

To the extent Nichols now argues specifically that his trial counsel should have filed a motion to suppress the use of the photographic line-up in which Brandon Williams identified Nichols, Nichols did not fairly present this argument to the state habeas court. Nichols has not established cause or prejudice for his failure to do so, or actual innocence. The claim regarding a motion to suppress is therefore procedurally defaulted. *See Ruiz*, 460 F.3d at 643.

### c) Failing to call additional witnesses

Nichols asserts that his trial counsel was ineffective for failing to subpoena certain alibi witnesses. (D.E. 2 at 13.) The state habeas court denied this ground for habeas relief because Nichols "fail[ed] to name or identify the beneficial defense witnesses who were at the scene of the crime that counsel also failed to call." (D.E. 21-25 at 14.)

Complaints of uncalled witnesses are not favored in federal habeas corpus review "because allegations of what a witness would have testified are largely speculative." *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007) (citing *Boyd v. Estelle*, 661 F.2d 388, 390

(5th Cir. 1981)). To demonstrate the required *Strickland* prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Absent affidavits or similar evidence from a particular uncalled witness, Nichols's claim is entirely speculative and fails to raise an issue of ineffective assistance of counsel. *See United States v. Curtis*, 769 F.3d 271, 276 (5th Cir. 2014) (holding that petitioner must state specifically what an investigation would have revealed and how it would have benefitted his defense).

Thus, this court finds that the state habeas court did not unreasonably apply *Strickland* in determining that Nichols's counsel provided effective assistance as to this ground. *See Mejia v. Davis*, 906 F.3d 307, 319 (5th Cir. 2018).

To the extent Nichols now identifies specific witnesses, this claim is procedurally defaulted from federal review. He has not shown cause or prejudice for his failure to present the claim to the state habeas court, or his actual innocence.

### d) Advising on Nichols's testimony

Nichols argues that he "gave a false confession on [the] stand, testifying in ignorance" due to "an incorrect and misleading statement by defense counsel." (D.E. 2 at 16.) Nichols does not identify specifically what his defense counsel incorrectly stated. In his state habeas proceedings, Nichols argued that his counsel was ineffective because he "persuaded appellant to plea self-defense" despite someone else having committed the crime. (D.E. 21-25 at 20, 21.) Nichols apparently believes that his defense counsel improperly advised him. The allegedly improper advice was that if the fact-finder believed Nichols shot Williams in self-defense, he would be acquitted. Nichols apparently tailored his testimony to that potential defense. The court, as fact-finder, did not credit Nichols's self-defense narrative, and instead found Nichols guilty.

The state habeas court found that Nichols was not denied effective assistance of counsel without specifically addressing this aspect of his claim. (D.E. 21-24 at 12–17.) This court finds that the state habeas court implicitly found that this ground for relief was meritless because Nichols's counsel was under the impression that Nichols believed he shot Brandon Williams in self-defense.

Nichols testified under oath that he was at El Dorado Night Club and that he shot at Brandon Williams. (D.E. 21-7 at 136–42.) Two other eyewitnesses corroborated that account. Again, Nichols's counsel apparently advised Nichols and prepared for trial in accordance with Nichols's account of events. That is not deficient performance under *Strickland*.

Even if Nichols could show that his counsel's performance was deficient for failing to prevent Nichols from testifying, he cannot show prejudice. No other evidence controverted Nichols's admission that he was at the scene of the crime and fired the gun. Nichols was positively identified as the shooter in court by Chavonne Williams (D.E. 21-7 at 17) and Brandon Williams. (D.E. 21-7 at 41–42.) Nichols has not shown a "likelihood of a different result" that is "substantial, not just conceivable." *See Harrington*, 562 U.S. at 112.

Thus, this court finds that the state habeas court did not unreasonably apply *Strickland* in determining that Nichols's counsel provided effective assistance as to this ground. *See Mejia v. Davis*, 906 F.3d 307, 319 (5th Cir. 2018).

> e) *Failing to object to the State's evidence during punishment on remand*

Nichols argues that after the Ninth Court of Appeals of Texas remanded his case for re-sentencing, his counsel failed to object to the introduction of evidence at his second sentencing hearing. (D.E. 2 at 16.) The state habeas court found that Nichols's counsel was not deficient on this ground because Nichols was not legally entitled to relief on any objections to his punishment. (D.E. 21-24 at 15–17.)

In his federal petition, Nichols does not identify what objectionable evidence was introduced or on what basis his counsel should have objected. These conclusory allegations are insufficient to raise an issue of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise an issue in a federal habeas proceeding.").

### F. Trial court error for denying motion for new trial

Nichols argues that the trial court abused its discretion in denying his amended motion for new trial based on newly acquired evidence. (D.E. 1 at 11.). In Nichols's motion for new trial, Nichols asserted only that "a material defense witness was prevented from testifying," the "defendant did not receive a fair trial," there was "newly discovered evidence," and he was denied effective assistance of counsel. (D.E. 21-5 at 46–47.) The state habeas court denied a similar claim in Nichols's state habeas application because it was "somewhat confusing" with "almost unintelligible" factual allegations, and thus "failed to plead sufficiently concrete and detailed allegations" to entitle Nichols to habeas relief. (D.E. 21-24 at 18.)

"[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). This court thus finds that the state habeas court's adjudication did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the State proceeding. 28 U.S.C. § 2254(d)(1).

To the extent Nichols's present claim includes factual allegations or arguments not presented to the state habeas court, it is procedurally defaulted from federal review. Nichols has not shown cause or prejudice for his failure to present the claim to the state habeas court, or his actual innocence.

### G. Actual innocence

Nichols provides Taye D. Frazier's affidavit, which states that Frazier is "100% sure Nichols was not" at the El Dorado Night Club because Nichols "stated directly to [Frazier] he wasn't going to" that club that night. (D.E. 1 at 24.) This affidavit was not presented to the state habeas court. The court liberally construes Nichols's submission of this affidavit to argue that Nichols is entitled to federal review of his procedurally defaulted claims based on his actual innocence. The court finds that he is not.

To be credible a habeas petitioner must support a claim of actual innocence with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To prevail on such a claim a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

Frazier's affidavit is not reliable evidence. It states only that Nichols told Frazier that Nichols was not planning to go to the night club at which Nichols shot Williams. It is wholly speculative and circumstantial. It does not contain eyewitness testimony. Besides, Nichols himself testified at trial that he was at the location of the shooting on the night of the shooting. (D.E. 21-7 at 136–42.) This court finds that the affidavit does not establish a likelihood that no reasonable juror would have convicted Nichols.

Nichols also argues that his trial counsel should have argued that another person, Donald Taylor, has admitted to committing the crime. (D.E. 2 at 16.) Nichols introduces no evidence, such as an affidavit by Taylor or any other eyewitness, indicating that Taylor is the actual shooter. Since Nichols provides no reliable evidence, he has not established his actual innocence. *See Schlup*, 513 at 324.

### 5. Conclusion

The court recommends that Davis's motion be granted and Nichols's petition be denied with prejudice. Nichols's motion for an

evidentiary hearing is denied. Any remaining motions are terminated as moot. Nichols has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, this court recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on ___August 1___, 2019.

_____
Peter Bray
United States Magistrate Judge